# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              Plaintiff,

-vs-

ISRAEL MENDEZ-MALDONADO

                              Defendant.

DECISION and ORDER

10-CR-6232 CJS

_____

**Siragusa, J.** This case was referred by order of the undersigned, dated November 24, 2010, Text Order of Referral, ECF No. 16, to Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. § 636(b)(1)(A)-(B) (2006). Defendant, Israel Mendez-Maldonado, is charged in a one-count indictment with illegal reentry into the United States after having been deported following a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2) (2006). Indictment, Nov. 23, 2010, ECF No. 15. The indictment alleges that Defendant was previously deported on May 1, 2001, and July 3, 2007. Mendez-Maldonado filed an omnibus pretrial motion, Notice of Motion, Mar. 15, 2011, ECF No. 23, seeking, *inter alia*, dismissal of the indictment, or alternatively suppression of his two prior removals. On August 10, 2011, Magistrate Judge Payson filed a Report and Recommendation ("R & R"), ECF No. 36, recommending that the Court deny Defendant's application. Defendant timely filed objections to the R & R on September 27, 2011. Objections to R & R , Sep. 27, 2011, ECF No. 38. As to his objections, Defendant essentially argues that Judge Payson erroneously concluded that he would not have been

granted discretionary relief, pursuant to 8 U.S.C. § 1182 (h) from his May 1, 2001, deportation by the Attorney General, based upon extreme hardship to his mother. However, for the reasons stated below, the R & R is adopted in principal part and Defendant's motion for dismissal or suppression is denied.

## STANDARD OF REVIEW

After receiving a party's objections to a magistrate judge's report and recommendation, the district court:

> shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

## DISCUSSION

Section 1326 of Title 8 provides that an alien-defendant may collaterally attack the underlying deportation order that forms an element of the charged offense only if the alien establishes each of the following three requirements:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987). The Court assumes *arguendo*, as Judge Payson did, that Defendant can meet the first two requisites for relief and considers only whether he can establish that the entry of the first order of deportation was fundamentally unfair. In that regard, the Court first, upon *de novo*

review of the submissions of the parties, accepts Judge Payson's findings of fact. R & R, at 2–4. Next, the Court considers, *de novo*, Judge Payson's legal determination that Defendant "has failed to demonstrate that it is reasonably likely or plausible that he would have been granted relief from deportation under Section 212(h). For this reason, Mendez cannot demonstrate that the entry of the deportation order that forms an element of the pending criminal charge was 'fundamentally unfair,'" R & R at 8.

It is well settled that the entry of a deportation order, in the face of procedural error, does not "render a proceeding fundamentally unfair unless that error resulted in prejudice. Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'" *United States v. Fernandez-Antonia,* 278 F.3d 150, 159 (2d Cir. 2002), *(citing with approval United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995)). There is no dispute that Defendant, an illegal alien convicted of the aggravated felony of Robbery Third Degree at the time of his first deportation, qualified for discretionary relief from such deportation pursuant to 8 U.S.C. 1182(h), since robbery is a crime of moral turpitude. "To qualify for such discretionary relief, the alien must be a family member of a United States citizen or legal resident and the immigration judge must determine that a denial of admission to the alien 'would result in extreme hardship' to the family member." *Fernandez-Antonia*, 278 F.3d at 160. However, "even if the inadequacies in his removal proceeding amounted to fundamental procedural errors, [defendant] cannot show that those errors prejudiced him because he cannot make even a *plausible showing* that he might have been granted discretionary relief."*Id*. (emphasis added).

Consequently, based upon the applicable law, the Court determines that to be entitled to the relief he now seeks, Defendant must make a plausible showing regarding his May 1, 2001, deportation that, absent any procedural errors, he would have established to the satisfaction of the Attorney General his denial of admission would result in extreme hardship to his mother. 8 U.S.C. § 1182(h). On this issue, the Court finds that Defendant has failed to make such plausible showing. As the Second Circuit observed in *Fernandez-Antonia*:

> "Extreme hardship" in the context of a § 212(h) waiver has been construed quite narrowly, and the waiver is considered to be a form of "exceptional" relief. See *INS v. Jong Ha Wang*, 450 U.S. 139, 145 (1981) (*per curiam*) ("The Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the 'extreme hardship' language, which itself indicates the exceptional nature of the suspension remedy."). Most, if not all, deportations involve some type of family hardship. See *United States v. Arce-Hernandez,* 163 F.3d 559, 564 (9th Cir. 1998). The key is that in order for a § 212(h) waiver to be granted properly, the hardship must be "extreme."

*Fernandez-Antonia,* 278 F.3d at 161.

In *United States v. Arrieta* , 224 F.3d 1076 (9th Cir 2000), the Ninth Circuit offered guidance on what would constitute a plausible showing in regard to an 8 U.S.C. § 1326 collateral attack:

> We also reject the government's argument concerning the definition of "extreme hardship." The government cites several cases to support its proposition that Mr. Arrieta's family would not have been able to make the showing necessary to meet that requirement. See *United States v. Arce-Hernandez*, 163 F.3d 559 (9th Cir.1998); *Shooshtary v. INS,* 39 F.3d 1049 (9th Cir. 1994); *Hassan v. INS,* 927 F.2d 465 (9th Cir. 1991). *Shooshtary* and *Hassan* are too dissimilar from this case to provide useful guidance. In *Shooshtary*, the alien presented virtually no concrete evidence of hardship. He simply asserted that his wife could not support the family and that he would have difficulty finding employment in Britain. *Shooshtary*, 39 F.3d at 1051. In *Hassan*, the alien could not substantiate his claim of

financial hardship because he was never authorized to work in the United States, and his wife and father had supported the family in the past. *Hassan*, 927 F.2d at 468.

*Arce-Hernandez*, however, provides more support for the government's position. In that case, the defendant attempted to collaterally challenge his illegal reentry conviction on the ground that he had not been informed about relief under § 212(h). The panel found a due process violation, but concluded that Arce-Hernandez did not show prejudice because he did not show extreme hardship. In *Arce-Hernandez,* we explained that because Arce-Hernandez's wife was in poor health, the family faced the option of moving to Mexico and suffering economic hardship or remaining in the United States and suffering economic hardship. *Id.* at 563-64. We concluded that the difficulties we identified, economic hardship and the difficulty of relocating, are typical when one spouse is deported, and therefore Arce-Hernandez's family had not, as a matter of law, demonstrated that they would suffer extreme hardship from his deportation. *Id.* at 564.

The hardships at issue in *Arce-Hernandez*, then, were the economic hardship posed by the bread-winner's deportation, and the problems related to the family's moving. Nothing in *Arce-Hernandez* indicates that there was any testimony concerning other severe harm that might befall the family. In *Arce-Hernandez*, we had no occasion to consider, for example, the specific hardship caused by family separation. *Arce-Hernandez* simply stands for the proposition that economic hardship caused by the deportation of a family's primary bread-winner, combined with the difficulties of relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief. Under that case, something more is required to remove the case from the "typical" hardship category.

The existence of family ties in the United States is the most important factor in determining hardship. *Gutierrez-Centeno v. INS,* 99 F.3d 1529, 1533 (9th Cir. 1996); *Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir. 1983). As in *Arce-Hernandez*, the record in this case shows that Mr. Arrieta provides his family with significant financial support. But unlike in Arce-Hernandez, Mr. Arrieta provided evidence of extreme hardship to his family extending well beyond deprivation of such support. He provided an affidavit from his mother documenting the critical role Mr. Arrieta played in raising his younger siblings. Mr. Arrieta's mother was in very poor health, and she was raising two citizen children. His mother documented the essential assistance Mr. Arrieta provided in helping to raise those children, especially when she was medically unable to do so. She also documented the severe sense of personal loss she felt when Mr. Arrieta was deported. Mr. Arrieta was not a spouse, but a son and brother. It was evident from the record that the effect of the deportation order would be separation rather than relocation. The

> record also showed that Mr. Arrieta's hardship would cause serious non-economic hardships to the family, in addition to the "typical" financial hardship found in *Arce-Hernandez.*
>
> Of particular importance is the evidence Mr. Arrieta produced of the effect that separation from him would have on his immediate family members, as to whom he provided essential emotional and other non-economic familial support. We have previously explained that "preservation of family unity" may be a central factor in an extreme hardship determination. *See Cerrillo-Perez v. INS*, 809 F.2d 1419, 1423 (9th Cir. 1987). We based this determination not only on the United States' international human rights commitments, but on "[t]he importance and centrality of the family in American life [which] is firmly established both in our traditions and in our jurisprudence." *Id.* Unlike in *Arce-Hernandez,* where we explained that it was not clear whether the alien's family would accompany him back to Mexico, (and did not consider the issue of family separation or emotional and other non-economic familial support,) in this case Mr. Arrieta has documented that his deportation would deprive his family of various forms of non-economic familial support and that it would disrupt family unity.
>
> In summary, although the evidence produced by Mr. Arrieta does not guarantee that he would have been granted a § 212(h) waiver, it provides the "something more" that makes it plausible that he would have received one. *See Jimenez-Marmolejo*, 104 F.3d at 1085 (finding a plausible ground for relief where the alien's entire family lived in the United States and the alien suffered from borderline retardation). Moreover, although our decision does not depend upon the expert testimony adduced, Mr. Arrieta did provide testimony from an expert witness, whose credibility the government does not now challenge, that there was "a reasonable possibility" that Mr. Arrieta would have been granted a waiver.[] This testimony provides additional support for the proposition that it is "*plausible*" that Mr. Arrieta would have received a § 212(h) waiver. Because it is plausible that Mr. Arrieta would have received a waiver, we hold that he was prejudiced by the government's due process violation. *See id.* at 1086.

*United States v. Arrieta*, 224 F.3d at 1081–83. In contrast, the Court agrees with Judge Payson's assessment of extreme hardship in this case:

> On the record before me, I find that Mendez has failed to demonstrate "extreme hardship." Here, Mendez had offered the affidavit of his brother in support of his contention that he would have been eligible for discretionary relief under the extreme hardship exception. While his brother's affidavit affirms that he suffered emotionally when Mendez was deported, sibling hardship is not covered by the statute. *See* 8 U.S.C. § 1182(h). Accordingly,

> Mendez must rely upon his brother's assertions that his mother, a victim of domestic violence, began to drink in order to cope with Mendez's deportation and developed problems with alcohol. The record, however, contains no information regarding the nature, degree, duration or effects of defendant's mother's problems.
>
> Certainly, the domestic violence allegations are serious and describe persistent abuse by Mendez's father and efforts by Mendez and his brother to protect their mother from such abuse. At oral argument on this motion, Mendez's counsel referenced legislative findings regarding the long-lasting psychological trauma caused by domestic violence and argued that the emotional trauma Mendez's mother experienced as a result of Mendez's deportation was far more serious than the type of "melancholy" commonly experienced as a result of familial separation. Despite these serious allegations, this Court has been unable to find any authority, nor has Mendez offered any, suggesting that such facts establish "extreme hardship" for the purposes of Section 212(h) relief. *Compare United States v. Garcia-Frausto*, 40 F. App'x 570, 575 (9th Cir. 2002) (mother's declaration that son's deportation made her depressed and "physically ill," coupled with separate declaration from father that he was "devastated," did not establish "extreme hardship") *with Hernandez-Perez v. Mukasey*, 271 F. App'x 592, 593–94 (9th Cir. 2008) (psychiatrist's affidavit asserting that mother would likely attempt suicide was "compelling evidence that [alien's] mother would experience hardship beyond the ordinary consequences of a relative's removal from the United States"). Moreover, the absence of any evidence demonstrating the severity and effects of his mother's alcohol issues leads me to conclude that the Miguel's allegations do not satisfy a showing of "extreme hardship."

R & R 7–8.

## CONCLUSION

Accordingly, Defendant's motion to dismiss the subject indictment, or alternatively suppress his two prior removals, ECF No. 23, is denied.

SO ORDERED.

Dated: November 7, 2011
Rochester, New York

                ENTER.

                /s/ Charles J. Siragusa
                CHARLES J. SIRAGUSA
                United States District Judge